1
2
3
4          IN THE UNITED STATES DISTRICT COURT
5          FOR THE DISTRICT OF ARIZONA
6
7   JOSE ANGEL PEREZ SANCHEZ,          )
                                       )
8              Petitioner,             )     No.   CV 07-1990-PHX-JAT (BPV)
    vs.                                )
9                                      )
                                       )     **REPORT AND**
10  DORA B. SCHRIRO, et al.,           )     **RECOMMENDATION**
                                       )
11             Respondents.            )
    _____)
12
13          On October 15, 2007, Petitioner, an inmate confined in the Arizona State Prisons
14  Complex in Florence, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus by a
    Person in State Custody, pursuant to Title 28, U.S.C. § 2254 ("Petition"). (Doc. No. 1.)[1]
15  Respondents filed an Answer to the Petition on December 12, 2007. (Doc. No. 6.) No
16  reply was filed.
17
18          Pursuant to the Rules of Practice of this Court, this matter was referred to
19  Magistrate Judge Bernardo P. Velasco for a Report and Recommendation.
20          For the reasons discussed below, the Magistrate Judge recommends that the
21  District Court enter an order DISMISSING Grounds One, Three and Four, and
    GRANTING RELIEF as to Ground Two.
22
23  **I.    FACTUAL AND PROCEDURAL BACKGROUND**
24          A.    Change of Plea and Sentencing
25          On August 15, 2002, seven individuals were involved in an armed attack on an
26  apartment complex in Mesa, Arizona in Maricopa County.  (Ex. A, R.T. 4/1/03 at 13-
27  _____
28      [1]  "Doc. No." refers to documents in this Court's file.

15.)[2]  The individuals took property or currency from several individuals while armed with a handgun.  (Id., at 14.)

On August 26, 2002, the Maricopa County Grand Jury returned a 15-count indictment charging Petitioner, along with six co-defendants, with three counts of first-degree burglary, four counts of armed robbery, seven counts of kidnapping, and one count of aggravated assault.  (Ex. O.)

On November 21, 2002, co-defendants Jesus Morqui, Jose Burruel and Robert Wilson pled guilty pursuant to plea agreements.  (Ex. B.)  On December 4, 2002, co-defendant Enrique Rosas pled guilty pursuant to a plea agreement.  (Id.)  On December 6, 2002, co-defendant Cesar Martinez Pena pled guilty pursuant to a plea agreement. (Id.)  On January 28, 2003, co-defendant Jesus Arviz pled guilty pursuant to a plea agreement.  (Id.)

The trial court sentenced Morqui, Pena and Wilson to 6.5 years' imprisonment; Burruel to 5 years' imprisonment, and Rosas to 10.5 years imprisonment.  (Ex. C.) Arviz, whose plea agreement included a plea to the dangerous nature of the offense, was sentenced to 15 years' imprisonment.  (Ex. C.)

On April 1, 2003, Petitioner entered a plea agreement to plead guilty to Count 1, burglary in the first degree, a class 2 dangerous felony; Count 7, armed robbery, a class 2 dangerous felony; and Count 10, kidnapping, a class 2 felony.  (Ex. A, Plea Agreement.)  The State also agreed to dismiss the remaining charges as part of the agreement.  (Id.)  The trial court accepted the Petitioner's plea on that same date.  (Ex. A, R.T. 4/1/03 at 20; Ex. B.)

On June 13, 2003, at the time of sentencing, Petitioner moved to withdraw from the plea agreement.  (Ex. D, R.T. 6/13/2003, at 3.)  The trial court denied the motion

---

[2]   "Ex." refers to the exhibits attached to Respondents' Answer and Response to Order.

1   and proceeded with sentencing.  (Id., at 22.)  Petitioner was sentenced to an aggravated

2   term of fourteen years imprisonment in the Arizona Department of Corrections

3   ("ADC"), with 301 days credit for time served on Counts 1 and 7, to be served

4   consecutively, and was placed on intensive probation for Count 10 for a period of five

5   years upon release from ADC.  (Id., at 30-32.)

6           B.      First Petition for Post-Conviction Relief

7           On June 26, 2003, Petitioner filed his first notice of post-conviction relief.  (Ex.

8   G.)  On March 1, 2004, Consuelo Ohanesian, a Deputy Legal Advocate,  filed a Notice

9   of Completion of Post-Conviction Review by Counsel with the trial court, noting that

10  she had reviewed the record, and was unable to identify any claims for relief to raise in

11  post-conviction relief proceedings. (Ex. H.) Counsel requested that the trial court grant

12  an extension of time to allow Petitioner to file a *pro per* petition with the court.  (Ex.

13  H.)  The trial court granted counsel's request.  (Ex. I.)

14          On May 6, 2004, the trial court struck Petitioner's first pro per petition for post-

15  conviction relief because it exceeded the 25-page maximum provided by Rule 32.5.

16  (Ex. J.)  The trial court granted Petitioner an extension of time to submit a petition in

17  compliance with Rule 32.5.  (Id.)  On June 8, 2004, the trial court dismissed Petitioner's

18  revised petition for post-conviction relief pursuant to Rule 32.5, noting that, although

19  it was less than 25 pages in length, "the handwriting is so small that [the] petition is

20  illegible."  (Ex. K.)

21          C.      Second Petition for Post-Conviction Relief

22          On March 8, 2005, the trial court received a second notice of post-conviction

23  relief raising a claim pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004).  (Answer,

24  at 9; Petition, at 2; Ex. L.)  On March 15, 2005, the trial court ruled on the notice,

25  allowing the petition to proceed as to the only claim raised – a *Blakely* issue – and

26  appointed counsel.  (Id.)  On January 23, 2006, the trial court found that Petitioner was

27  not entitled to relief, as Petitioner's initial Rule 32 proceedings were dismissed with

28

1   prejudice by the court prior to the effective date of *Blakely*.  (Ex. M.)  Accordingly, the

2   trial court dismissed the petition pursuant to Rule 32.6(c)  (Id.)

3          Petitioner, through counsel,  filed a petition for review with the court of appeals,

4   arguing that the June 4, 2004 dismissal of Petitioner's *pro per* petition for post-

5   conviction relief did not relieve the court of jurisdiction to hear a successive petition

6   based on *Blakely v. Washington*, which was a significant change in the law.  (Ex. P, at

7   5.)  The petition for review with the court of appeals was denied without comment on

8   March 12, 2007.  (Ex. R.)  On April 16, 2007, Petitioner sought review in the Arizona

9   Supreme Court raising the same issue as the petition for review to the appellate court.

10   (Ex. S.)  Respondents filed a Notice of Acknowledgment, stating that the issue had

11   already been presented to the trial and appellate courts, and that the petition for review

12   established no basis for review by the Arizona Supreme Court, and that they would

13   therefore not be filing a response.  (Ex. T.)  The petition for review to the supreme court

14   was denied without comment on July 17, 2007.  (Ex. U.)

15          E.      Federal Habeas

16          Petitioner filed the present petition for habeas corpus in the District Court on

17   October 15, 2007.  (Doc. No. 1.)  Petitioner raises four claims: (1) Ineffective assistance

18   of counsel; (2) A violation of his 6th Amendment right to have a jury determine the

19   existence of aggravating factors; 3) A 5th Amendment/Due Process violation caused by

20   his attorney's failure to forward sentencing letters to the trial judge; and (4) an 8th

21   Amendment violation caused by excessive punishment disproportionate to the crime.

22   (Petition, at 5-8.)

23   **II.    DISCUSSION**

24          A.      Standard of Review

25          Because Petitioner filed his petition after April 24, 1996, this case is governed

26   by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)

27   ("AEDPA").

28

1      B.      Statute of Limitations

2          A one year period of limitation shall apply to an application for writ of habeas

3   corpus by a person in custody pursuant to the judgment of a State court.  28 U.S.C. §

4   2244(d)(1).  Under the AEDPA, a state prisoner must generally file a petition for writ

5   of habeas corpus within one year from "the date on which the judgment became final

6   by the conclusion of direct review or the expiration of time for seeking such review [.]"

7   28 U.S.C. § 2244(d)(1)(A).  "The time during which a properly filed application for

8   state post-conviction or other collateral review with respect to the pertinent judgment

9   or claim is pending shall not be counted toward any period of limitation[.]" 28 U.S.C.

10  § 2244(d)(2).  Respondents concede the timeliness of the habeas petition.  Based on a

11  review of the record, the Court finds that the petition is timely under 28 U.S.C. §

12  2244(d)(1)(A).

13     C.      Exhaustion of State Remedies

14         Before a federal court may review a petitioner's claims on the merits, a petitioner

15  must exhaust his state remedies, which means he must have presented in state court

16  every claim raised in his federal habeas petition.  *See Coleman v. Thompson*, 501 U.S.

17  722, 731 (1991); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (a state prisoner in

18  a federal habeas action must exhaust his federal claims in the state courts "by invoking

19  one complete round of the State's established appellate review process" before he may

20  submit those claims in a federal habeas petition); *Swoopes v. Sublett*, 196 F.3d 1008,

21  1010 (9th Cir. 1999).  Exhaustion of state remedies is required in order to give the state

22  the "opportunity to pass upon and correct alleged violations of its prisoners' federal

23  rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and

24  citations omitted). In order to provide a state with this necessary opportunity, "the

25  prisoner must fairly present his claim in each appropriate state court . . . thereby alerting

26  that court to the federal nature of the claim." *Id.* (internal quotation marks and citations

27  omitted).

28                                    - 5 -

1    A claim is "fairly presented" if the petitioner has described the operative facts
2  and legal theories on which his claim is based.  *Anderson v. Harless*, 459 U.S. 4, 6
3  (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Tamalini v. Stewart*, 249 F.3d 895,
4  898 (9th Cir. 2001).  In state court, the petitioner must describe not only the operative
5  facts but also the asserted constitutional principle, for if "state courts are to be given the
6  opportunity to correct alleged violations of prisoners' federal rights, they must surely
7  be alerted to the fact that the prisoners are asserting claims under the United States
8  Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If a habeas petitioner
9  wishes to claim that an evidentiary ruling at a state court trial denied him the due
10  process of law guaranteed by the Fourteenth Amendment, he must say so, not only in
11  federal court, but in state court.").  A petitioner does not ordinarily "fairly present" a
12  federal claim to a state court if that court must read beyond a petition, brief, or similar
13  papers to find material that will alert it to the presence of a federal claim. *Baldwin*, 541
14  U.S. at 32-33 (rejecting contention that petition fairly presented federal ineffective
15  assistance of counsel claim because "ineffective" is a term of art in Oregon that refers
16  only to federal law claims, since petitioner failed to demonstrate that state law uses
17  "ineffective assistance" as referring only to federal law rather than a similar state law
18  claim); *Harless*, 459 U.S. at 6 (holding that mere presentation of facts necessary to
19  support a federal claim, or presentation of state claim similar to federal claim, is
20  insufficient; petitioner must fairly present the substance of the federal claim); *Hiivala
21  v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal
22  due process issue in state court because petitioner presented claim in state court only
23  on state grounds); *Gatlin v. Madding*, 189 F.3d 882 (9th Cir. 1999) (holding that
24  petitioner failed to "fairly present" federal claim to state courts where he failed to
25  identify the federal legal basis for his claim).

26    In Arizona, exhaustion is satisfied if a claim is presented to the Arizona Court
27  of Appeals.  A discretionary petition for review to the Supreme Court of Arizona is not

28                                    - 6 -

1  necessary for purposes of federal exhaustion. *Swoopes*, 196 F.3d at 1010; *State v.*

2  *Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989) (in non-capital cases, state remedies are

3  exhausted by review by the court of appeals); *Castillo v. McFadden*, 399 F.3d 993, 998

4  (9th Cir. 2005) (quoting *Swoopes* for assertion that in cases not carrying a life sentence

5  or the death penalty, "claims of Arizona state prisoners are exhausted for purposes of

6  federal habeas once the Arizona Court of Appeals has ruled on them").

7         The Ninth Circuit Court of Appeals has explained the distinction between

8  exhaustion and procedural default as follows:

9  The exhaustion requirement is distinct from the procedural default rule.
   The exhaustion doctrine applies when the state court has never been
10  presented with an opportunity to consider a petitioner's claims and that
   opportunity may still be available to the petitioner under state law.  In
11  contrast, the procedural default rule barring consideration of a federal
   claim applies only when a state court has been presented with the federal
12  claim, but declined to reach the issue for procedural reasons, or if it is
   clear that the state court would hold the claim procedurally barred. Thus,
13  in some circumstances, a petitioner's failure to exhaust a federal claim in
   state court may *cause* a procedural default. A habeas petitioner who has
14  defaulted his federal claims in state court meets the *technical*
   requirements for exhaustion; there are no state remedies any longer
15  "available" to him. A federal claim that is defaulted in state court
   pursuant to an adequate and independent procedural bar may not be
16  considered in federal court unless the petitioner demonstrates cause and
   prejudice for the default, or shows that a fundamental miscarriage of
17  justice would result if the federal court refused to consider the claim.

18  *Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005) (internal quotation marks and

19  citations omitted).  In other words, a habeas petitioner's claims may be precluded from

20  federal review in either of two ways.  First, a claim may be procedurally defaulted in

21  federal court if it was actually raised in state court but found by that court to be

22  defaulted on state procedural grounds.  *Coleman*, 501 U.S. at 729-30.  Second, the

23  claim may be procedurally defaulted in federal court if the petitioner failed to present

24  the claim in a necessary state court and "the court to which the petitioner would be

25  required to present his claims in order to meet the exhaustion requirement would now

26  find the claims procedurally barred."  *Id.* at 735 n.1. This is often referred to as

27

28

1   "technical" exhaustion, because although the claim was not actually exhausted in state
2   court, the petitioner no longer has an available state remedy.

3       If a claim has never been presented to the state court, a federal habeas court may
4   determine whether state remedies remain available[3]. *See Harris v. Reed*, 489 U.S. 255,
5   269-70 (1989); *Teague v. Lane*, 489 U.S. 288, 298-99.

6       Rule 32.1 of the Arizona Rules of Criminal Procedure allows a defendant to seek
7   post-conviction relief on the ground that his conviction was in violation of the
8   Constitution of the United States.  Ariz. R. Crim. P. 32.1(a).  Arizona Rule of Criminal
9   Procedure 32, however, governs when a petitioner may seek relief in post-conviction
10  proceedings and raise federal constitutional challenges to their convictions or sentences
11  in state court.  Under Rule 32.2(a), relief is barred on any claim which could have been
12  raised in a prior Rule 32 petition for post-conviction relief, with the exception of certain
13  claims which fall under sub-sections (d) through (h) of Rule 32.1, and which were
14  justifiably omitted from a prior petition.

15      Furthermore, Rule 32.4 (a) requires that a petition for post-conviction relief must
16  be filed within 90 days of the entry of judgment and sentence or 30 days after the
17  issuance of the order and mandate in the direct appeal, whichever is the later.  See Ariz.
18  R. Crim. P. 32.4(a).  Again, the exceptions to this requirement are claims asserted under
19  subsections (d) through (h) of Rule 32.1.  Ariz. R. Crim. P. 32.4(a).

20      Thus, in situations where a petitioner might otherwise attempt to revive an
21  unexhausted federal claim in state court, and the state court might invoke the procedural

22  _____

23      [3]      Although the Ninth Circuit has recently suggested that under
        Rule 32.2(a)(3), there are exceptions to the rule that a District
24      Court can make such a determination for claims which require
        a knowing, voluntary, and intelligent waiver, *see Cassett*, v.
25      Stewart, 406 F.3d 614, (9th Cir. 2005), this Court does not
        address such waiver because it has not been affirmatively raised
26      in this case by the Petitioner.  *See Beaty v. Stewart*, 303 F.3d
27      975, 987 & n.5 (9th Cir. 2002).

28                                    - 8 -

1    bars of Rule 32.2(a) and 32.4(a), Arizona Rules of Criminal Procedure, in rejecting such

2    an attempt, there is an adequate and independent state ground barring Petitioner from

3    raising these claims in state court proceedings thereby creating a procedural default for

4    purposes of federal habeas review.  *See eg. Stewart v. Smith*, 536 U.S. 856,  (holding

5    that Rule 32.2(a) is an adequate and independent procedural bar).

6         If a claim is procedurally defaulted, it may not be considered by a federal court

7    unless the petitioner demonstrates cause and prejudice to excuse the default in state

8    court, or demonstrates that a fundamental miscarriage of justice would result. *Id*. at 750;

9    *Sawyer v. Whitley*, 505 U.S. 333, 338-339 (1992).  If a claim has never been fairly

10   presented to the state court, a federal habeas court may determine whether state

11   remedies remain available.  *See Harris v. Reed*, 489 U.S. 255, 269-70 (1989); *Teague*

12   *v. Lane*, 489 U.S. 288, 298-99 (1989); *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

13        Cause is defined as a "legitimate excuse for the default," and prejudice is defined

14   as "actual harm resulting from the alleged constitutional violation."  *Thomas v. Lewis*,

15   945 F.2d 1119, 1123 (9th Cir. 1991); *see Murray v. Carrier*, 477 U.S. 478, 488, 106

16   S.Ct. 2639 (1986) (a showing of cause requires a petitioner to show that "some

17   objective factor external to the defense impeded counsel's efforts to comply with the

18   State's procedural rule"). Prejudice need not be addressed if a petitioner fails to show

19   cause. *Thomas*, 945 F.2d at 1123 n.10.  To bring himself within the narrow class of

20   cases that implicate a fundamental miscarriage of justice, a petitioner "must come

21   forward with sufficient proof of his actual innocence," *Sistrunk v. Armenakis*, 292 F.3d

22   669, 672-73 (9th Cir. 2002) (internal quotation marks and citations omitted), which can

23   be shown when "a petitioner 'presents evidence of innocence so strong that a court

24   cannot have confidence in the outcome of the trial unless the court is also satisfied that

25   the trial was free of nonharmless constitutional error.'" *Id.* at 673 (quoting *Schlup v.*

26   *Delo*, 513 U.S. 298, 316 (1995)).

27        D.    Standard of Review: Merits

28                                      - 9 -

1      Petitioner's habeas claims are governed by the applicable provisions of the

2   Antiterrorism and Effective Death Penalty Act (AEDPA).  *See Lindh v. Murphy*, 521

3   U.S. 320, 336 (1997).  The AEDPA established a "substantially higher threshold for

4   habeas relief" with the "acknowledged purpose of 'reduc[ing] delays in the execution

5   of state and federal criminal sentences.' " *Schriro v. Landrigan*, 127 S.Ct. 1933,

6   1939-40 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)).  The

7   AEDPA's " 'highly deferential standard for evaluating state-court rulings' ... demands

8   that state-court decisions be given the benefit of the doubt ." *Woodford v. Visciotti*, 537

9   U.S. 19, 24 (2002) (per curiam) (quoting *Lindh*, 521 U.S. at 333 n. 7).

10      Under the AEDPA, a petitioner is not entitled to habeas relief on any claim

11   "adjudicated on the merits" by the state court unless that adjudication:

12      (1)   resulted in a decision that was contrary to, or involved an

13            unreasonable application of, clearly established Federal

14            law, as determined by the Supreme Court of the United

15            States; or

16      (2)   resulted in a decision that was based on an unreasonable

17            determination of the facts in light of the evidence presented

18            in the State court proceeding.

19   28 U.S.C. § 2254(d).

20      The phrase "adjudicated on the merits" refers to a decision resolving a party's

21   claim which is based on the substance of the claim rather than on a procedural or other

22   non-substantive ground. *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004).  The

23   relevant state court decision is the last reasoned state decision regarding a claim. *Barker*

24   *v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S.

25   797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

26      "The threshold question under AEDPA is whether [the petitioner] seeks to apply

27   a rule of law that was clearly established at the time his state-court conviction became

28

final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review.  "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final.  *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 127 S.Ct. 649, 653 (2006); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).  Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue.  *Williams*, 529 U.S. at 381; *see Musladin*, 127 S.Ct. at 654; *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004).  Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably.  *Clark*, 331 F.3d at 1069.

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1).  The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result.  *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court cases] to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."  *Williams*, 529 U.S. at 406; *see Lambert*, 393 F.3d at 974.

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule

1    from [the Supreme] Court's cases but unreasonably applies it to the facts of the
2    particular ... case" or "unreasonably extends a legal principle from [Supreme Court]
3    precedent to a new context where it should not apply or unreasonably refuses to extend
4    that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For
5    a federal court to find a state court's application of Supreme Court precedent
6    "unreasonable" under § 2254(d)(1), the petitioner must show that the state court's
7    decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at
8    409; *Landrigan*, 127 S.Ct. at 1939; *Visciotti*, 537 U.S. at 25.

9          Under the standard set forth in § 2254(d)(2), habeas relief is available only if the
10   state court decision was based upon an unreasonable determination of the facts.
11   *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) ( *Miller-El II*).  A state court decision
12   "based on a factual determination will not be overturned on factual grounds unless
13   objectively unreasonable in light of the evidence presented in the state-court
14   proceeding." *Miller-El*, 537 U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*,
15   366 F.3d 992, 999 (9th Cir. 2004).  In considering a challenge under § 2254(d)(2), state
16   court factual determinations are presumed to be correct, and a petitioner bears the
17   "burden of rebutting this presumption by clear and convincing evidence."  28 U.S.C.
18   § 2254(e)(1); *Landrigan*, 127 S.Ct. at 1939-40; *Miller-El II*, 545 U.S. at 240.  However,
19   it is only the state court's factual findings, not its ultimate decision, that are subject to
20   § 2254(e)(1)'s presumption of correctness. *Miller-El I*, 537 U.S. at 341-42 ("The clear
21   and convincing evidence standard is found in § 2254(e)(1), but that subsection pertains
22   only to state-court determinations of factual issues, rather than decisions.").

23         As the Ninth Circuit has noted, application of the foregoing standards presents
24   difficulties when the state court decided the merits of a claim without providing its
25   rationale. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Pirtle v. Morgan*,
26   313 F.3d 1160, 1167 (9th Cir. 2002); *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir.
27   2000).  In those circumstances, a federal court independently reviews the record to

28                                         - 12 -

1   assess whether the state court decision was objectively unreasonable under controlling
2   federal law.  *Himes*, 336 F.3d at 853; *Pirtle*, 313 F.3d at 1167.  Although the record is
3   reviewed independently, a federal court nevertheless defers to the state court's ultimate
4   decision. *Pirtle*, 313 F.3d at 1167 (citing *Delgado*, 223 F.3d at 981-82); *see also Himes*,
5   336 F.3d at 853.  Only when a state court did not decide the merits of a properly raised
6   claim will the claim be reviewed de novo, because in that circumstance "there is no
7   state court decision on [the] issue to which to accord deference."  *Pirtle*, 313 F.3d at
8   1167; *see also Menendez v. Terhune*, 422 F.3d 1012, 1025-26 (9th Cir. 2005); *Nulph v.*
9   *Cook*, 333 F.3d 1052, 1056-57 (9th Cir. 2003).

10  **III.   ANALYSIS**

11          **A.      Grounds One, Three and Four**

12                  1.      Exhaustion and Procedural Default

13          Respondents argue that Petitioner failed to properly exhaust any of his claims
14  in his initial Post-Conviction Relief ("PCR") proceeding because he failed to seek
15  review of those claims in the Arizona Court of Appeals.

16          Petitioner has submitted that Grounds One through Four of his Petition were
17  submitted for review by the state supreme court.  (See Petition, at 5 -8.)  The record
18  belies this assertion, however, as there was no petition for review filed after his first
19  "of-right" petition for post-conviction relief, and the only issue raised in the petition for
20  review from the second petition for post-conviction relief was the *Blakely* issue.

21          Respondents have included in the record two letters from the Arizona Court of
22  Appeals  that indicate that Petitioner, while represented by counsel, attempted to file a
23  petition for review by the Arizona Supreme Court, which was first refused filing by the
24  Clerk of Court for the Arizona Court of Appeals for failure to comply with Rule 31.19
25  (Ex. V, letter dated April 18, 2007 from Clerk of Court), and next refused because
26  Petitioner was represented by counsel and the Clerk of Court noted that he was not
27  allowed to file documents on his own behalf.  (Ex. V, letter dated May 15, 2007)

28                                          - 13 -

1    Although it is not evident that Petitioner attempted to raise Grounds One, Three

2    and Four with the Supreme Court in the unauthorized *pro per* petition for review, this

3    Court concludes that even if he had argued these claims, Petitioner could not have

4    exhausted those claims by raising them for the first and only time in a petition for

5    review with the Arizona Supreme Court.  *See Castille v. Peoples*, 489 U.S. 346, 351

6    (1989 ) (holding that the requirement that a claim raised on federal habeas corpus

7    previously have been "fairly presented" to the state courts is not satisfied by the first-

8    time presentation of the claim to a state appellate court under a procedure that, by state

9    rule, permits discretionary review only when "there are special and important reasons

10   therefor")(citations and quotations omitted).

11   Petitioner's right to direct review having been completed, he would have to

12   present these claims in an additional petition for post-conviction relief. The state courts

13   have never had an opportunity to address the legal theories presented in Grounds One,

14   Three and Four of Petitioner's federal habeas Petition in a procedurally appropriate

15   manner.  Further, Petitioner is barred from returning to state court to raise this claim.

16   See Ariz.R.Crim.P. 32.2(a)(3). Nor does Petitioner fall within the narrow exceptions to

17   the procedural bar rule. See Ariz.R.Crim.P. 32.1(d)-(h).  Petitioner would be precluded

18   from raising these claims in another petition for post-conviction relief. Rule 32.2(a)(3),

19   Ariz.R.Crim.P.  These claims, therefore, are procedurally defaulted.

20   Accordingly, federal habeas review of Grounds One, Three and Four is barred

21   absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice."

22   *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Carrier*, 477 U.S. at 488.

23                              2.    Cause and Prejudice

24   Petitioner has procedurally defaulted the following claims:  All claims asserted

25   in Grounds One, Three and Four. Petitioner has not established cause for his procedural

26   default for any of the claims.

27

28

1    Petitioner's status as an inmate and lack of legal knowledge do not constitute
2    cause for his failure to present any of his grounds for relief to the Arizona courts.
3    *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 909 (9th Cir.1986)(finding that
4    an illiterate *pro se* petitioner's lack of legal assistance did not amount to cause to excuse
5    a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir.1988)(finding
6    that petitioner's arguments concerning his mental health and reliance upon jailhouse
7    lawyers did not constitute cause.)

8    Likewise, Petitioner has not satisfied the "fundamental miscarriage of justice"
9    standard. Additionally, Petitioner has not presented any new reliable evidence to
10   support any assertion of innocence which would allow this court to consider these
11   claims as a ground for a writ of habeas corpus in spite of the procedural default.
12   Because petitioner has not presented any new reliable evidence that he is innocent of
13   these crimes, a miscarriage of justice will not occur if the court declined to review the
14   procedurally defaulted claims on the merits.

15   B.    Ground Two

16   Petitioner asserts in Ground Two that he was denied his Sixth Amendment right
17   to have a jury determine the existence of aggravating factors.

18   Petitioner asserts in support of this claim that the state courts are refusing to
19   acknowledge that *Blakely* is a significant change in the law that would probably
20   overturn Petitioner's conviction or sentence. (Petition at 6.) Additionally, Petitioner
21   asserts that the June 4, 2004 dismissal of Petitioner's pro per petition for post-
22   conviction relief did not relieve the court of jurisdiction to hear a successive petition
23   based on *Blakely v. Washington*. (Id.)

24        *1.    Exhaustion*

25   Respondents concede that Petitioner properly exhausted the *Blakely* claim by
26   raising the claim in his successive PCR petition and petition for review to the state
27   appellate courts. (Answer, at 11.)

28

2.    *Relevant Facts*

Petitioner's first "of-right" petition for post-conviction relief was dismissed by the trial court by minute entry dated June 4, 2004, and filed June 8, 2004. *Blakely v. Washington*, 542 U.S. 296,  was decided sixteen days later, on June 24, 2004.

When petitioner raised the *Blakely* issue in a successive notice of post-conviction relief filed on March 8, 2005, the trial court, after further briefing by appointed counsel, concluded that Petitioner's "initial Rule 32 Petition For Post-Conviction Relief was dismissed with prejudice by the Court prior to the effective date of <u>Blakely v. Washington</u>.  As a consequence, Defendant is not entitled to relief as requested in the Petition for Post-Conviction Relief..." and the trial court consequently denied relief and dismissed the petition pursuant to Rule 32.6(c).  (Ex. M.)

The issue Petitioner presented for review to the court of appeals and supreme court was "[w]hether the June 4, 2004 dismissal of Appellant's pro per petition for post-conviction relief relieved the court of jurisdiction to hear a successive petition based on *Blakely v. Washington*, which was a significant change in the law." (Ex. P, at 2.)  Both the court of appeals and supreme court denied petition for review without comment. (Ex's  R and U.)

3.    *Merits*

The state court unreasonably applied federal law in holding that Blakely did not apply to Petitioner. *Blakely* was decided on June 24, 2004.  542 U.S. at 296.  Decisions establishing new constitutional rules do not generally apply retroactively to cases on collateral review.  *Teague v. Lane*, 489 U.S. 288, 305 (1989) (plurality).  The Ninth Circuit has held that the new rule announced in *Blakely* does not apply retroactively to cases that were already final for purposes of direct review at the time it was decided. *Schardt v. Payne*, 414 F.3d 1025, 1036 (9th Cir.2005).  It is clearly established, however, that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." *Griffith*

- 16 -

1    *v. Kentucky*, 479 U.S. 314, 322 (1987).  Thus, the applicability of *Blakely* turns upon

2    whether Petitioner's conviction and sentence were already "final" when *Blakely* was

3    decided.

4            The Supreme Court has instructed that "State convictions are final 'for purposes

5    of retroactivity analysis when the availability of direct appeal to the state courts has

6    been exhausted and the time for filing a petition for a writ of certiorari has elapsed or

7    a timely filed petition has been finally denied.'" *Beard v. Banks*, 542 U.S. 406, 411

8    (quoting *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994)).

9            In Arizona, a guilty plea waives the right to a "direct appeal" and allows

10   "review" only by petition for post-conviction relief pursuant to Rule 32 of the Rules of

11   Criminal Procedure. *See* Ariz. R.Crim. P. 17.1(e).  This is known as a "Rule 32 of-right

12   proceeding."  Ariz. R.Crim. P. 32.1.  The Rule 32 of-right proceeding preserves the

13   state constitution's guarantee of appellate review for pleading defendants and is the

14   "functional equivalent" of a direct appeal. *State v. Ward*, 211 Ariz. 158, 163

15   (Ariz.App.2005); *State v. Cleere*, 213 Ariz. 54, *1, n. 2 (Ariz.App. 2006). A pleading

16   defendant's conviction is not "final" while his timely-filed Rule 32 of-right proceedings,

17   including review, are pending. *See id.*

18          Petitioner's conviction and sentence became final on July 8, 2004, thirty (30)

19   days after the trial court summarily dismissed Petitioner's petition for post-conviction

20   relief, when Petitioner's opportunity to petition the Arizona Court of Appeals for

21   review had expired.  *See* Rule 32.9(c), Ariz.R.Crim.P. (stating that defendant has 30

22   days after the filing of a decision to file a petition for review by the Arizona Court of

23   Appeals).  Thus, Petitioner's Rule 32 of-right proceeding was not yet final when

24   *Blakely* was decided, and *Blakely* applies to Petitioner's case.

25          Respondents first argue that "at the time the trial court imposed sentence in June

26   2003 there was no clear Supreme Court precedent that in a non-capital case a defendant

27   was entitled to a jury finding on any aggravated circumstances that enhanced his

28

1  sentence within the statutory range." (Answer, at 12.)  Respondent's reliance on what

2  precedent was binding as of Petitioner's sentencing date is misguided.  As noted in this

3  Court's discussion above, the correct determination, under *Teague* and *Griffith*, is

4  whether or not Petitioner's conviction was final at the time of the *Blakely* decision.  It

5  was not.

6       Second, Respondents assert that Petitioner "agreed to an aggravated range of

7  sentence as part of his plea agreement" and, under *United States v. Garcia*, 507 F.3d

8  1213 (9th Cir. 2007), when a sentence is within the range agreed upon, a federal district

9  court need not comport with the guidelines and under federal law an appellate court is

10  without jurisdiction to consider the appeal.  The decision in *Garcia*, however, was

11  amended and superseded by the Ninth Circuit in *United States v. Garcia*, 522 F.3d 855

12  (9th Cir. 2008).  Moreover, the court in the first *Garcia* decision was reviewing a plea

13  agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and

14  determined that the defendants sentences, well within the statutory maximums, were not

15  "imposed in violation of law" and therefore, under 18 U.S.C. § 3742(a), the court was

16  without jurisdiction to review the sentence.  Thus, even if the first *Garcia* decision was

17  good law, the facts of the specific plea agreements in that case, as well as the unique

18  federal statutory considerations in addition to the sentences that were imposed below

19  the statutory maximum, readily distinguish *Garcia I* from the present case.

20       Respondents also argue that if Petitioner's case were final on June 8, 2004, he

21  would not be entitled to the benefit of *Blakely*, and that there is no clear Supreme Court

22  precedent holding that at what point in the case of a collateral attack upon a guilty plea

23  the case is "final" for purposes of a retroactivity analysis.

24       Under both applicable federal and state decisions, however, the state court was

25  unreasonable in its application of *Teague* and *Griffith*.  As discussed above, the Arizona

26  courts treat a Rule 32 of-right petition as the "functional equivalent" of a direct appeal,

27  and were doing so prior to the appellate courts' decisions denying review in this case.

28

1  *See State v. Ward*, 211 Ariz. 158, 163 (Ariz.App.2005).  Under *Beard, supra*, a state

2  conviction is not final for purposes of until the availability of direct appeal to the state

3  courts has been exhausted and the time for filing a petition for a writ of certiorari has

4  elapsed or a timely filed petition has been finally denied.

5        The state puts forward an additional argument that the state court's decision was

6  not objectively unreasonable, asserting that at the time the PCR court made its decision,

7  a Ninth Circuit decision filed the same month also assumed that a pleading defendant's

8  case was final when the judgment was entered, citing *Isley v. Arizona Department of*

9  *Corrections*, 383 F.3d 1054 (9th Cir. 2004).  This argument ignores the relevant time of

10 decision for purposes of habeas review, which in this case would be the Arizona

11 Supreme Court's denial of Petitioner's petition for review of the denial of his second

12 petition for post conviction relief, on July 17, 2007.  Where there has been one reasoned

13 state judgment rejecting a federal claim, later unexplained orders upholding that

14 judgment or rejecting the same claim rest upon the same ground. *Ylst v. Nunnemaker*

15 501 U.S. 797, 803 (1991).  Moreover, as the Ninth Circuit clarified later, in *Summers*

16 *v. Schriro*, 481 F.3d 710, 712 (9th Cir. 2007), both the petitioner in *Isley*, as well as the

17 State assumed that a Rule 32 of-right proceeding was collateral review under §

18 2244(d)(2), and that the Ninth Circuit had not considered the possibility that a Rule 32-

19 of right proceeding might be a form of direct review rather than collateral review, thus

20 its decision was "unconsidered dictum."  *Summers* was decided March 13, 2007, or four

21 months before the Arizona Supreme Court denied Petitioner's petition for review in this

22 case.  It is irrelevant to Petitioner's argument that the initial PCR court made its

23 decision nearly 3 years before *Summers* was decided.

24        Finally, Respondents reassert an argument similar to that already discussed

25 above, that the failure of the trial court to apply Blakely did not have a "substantial and

26 injurious effect" on Petitioner's sentence.  Respondents argue that Petitioner "got what

27 he bargained for" and that the "aggravating circumstance was not the cause of his

28

sentence, rather it was the range he bargained for."  This argument is simply without merit.  A judge, not a jury, found facts that made Petitioner eligible for an aggravated sentence and, in doing so, applied a lesser standard of proof than *Blakely* requires.

Federal courts apply the plain-error standard to review Sixth Amendment violations to which defendant failed to object at sentencing. *United States v. Cotton*, 535 U.S. 625, 631 (2002)(declining to reverse sentence based on *Apprendi*-error under the fourth requirement of the plain error standard).

On habeas corpus review, the controlling standard of review is less stringent than on direct review and inquires "whether the error 'had substantial and injurious effect or influence,'" and whether the error resulted in "actual prejudice." *Fry v. Pliler*, ---U.S.---, 127 S.Ct. 2321, 2328 (2007), *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 766 (1946) and *United States v. Lane*, 474 U.S. 438, 449 (1986), respectively).

In this case, because Petitioner did not object at the time of sentencing to the failure to have a jury determine the aggravating factors, any *Blakely* violation would be properly reviewed for fundamental error, rather than for trial error[4].  *State v. Henderson*, 210 Ariz. at 568 (Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not have possibly received a fair trial.").  Under the analogous federal plain-error standard, an appellate court cannot reverse, based upon an objection not timely raised in the lower court unless: (1) there was error, (2) the error was "plain," (3) the error "affects substantial rights"; and (4) the error seriously affects

---

[4]   Trial error is reviewable in state court under the harmless error standard. *Henderson*, 210 Ariz. at 567.  Harmless error review places the burden on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence.  *Id*. (citations omitted).

1  the fairness, integrity, or public reputation of judicial proceedings." *Cotton*, 535 U.S.
2  at 632 (citations omitted).

3      In this case, however, because the state courts found that *Blakely* did not apply
4  to Petitioner's case, the courts made no finding as to prejudice. On the record before
5  this court, it is not clear that Petitioner could not establish prejudice, and that the error
6  was harmless.  This is not a case where Petitioner admitted to the aggravating factors
7  as part of his plea agreement, or that a prior conviction was established as the basis to
8  impose an aggravated sentence.  Therefore, the case should be remanded to the state
9  court for resentencing.

10  **IV.    CONCLUSION**

11      This Court recommends that the District Court DISMISS claims One, Three and
12  Four of Petitioner's Petition for Writ of Habeas Corpus.

13      This Court further recommends that the District Court GRANT Petitioner's
14  request for relief as to Ground Two, and remand this case to the state court for
15  resentencing.

16      Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections
17  within ten days after being served with a copy of this Report and Recommendation.  A
18  party may respond to another party's objections within ten days after being served with
19  a copy thereof.  Fed.R.Civ.P. 72(b).   If objections are filed the parties should use the
20  following case number: **CIV 07-1990-PHX-JAT**.

21      If objections are not timely filed, then the parties' right to *de novo* review by the
22  District Court may be deemed waived.  *See United States v. Reyna-Tapia,* 328 F.3d
23  1114, 1121 (9th Cir) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

24      DATED this 12th day of January, 2009.

25

26  _____
27  Bernardo P. Velasco
    United States Magistrate Judge

28                              - 21 -